IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JARED WILLIAM DECACCIA, | CV 22-079-H-KLD |
| Plaintiff, | |
| vs. | ORDER |
| CAPT. BRAGG, ET AL., | |
| Defendants. | |

Plaintiff Jared DeCaccia has moved for summary judgment, (Doc. 44), and for sanctions (Doc. 48). He has also moved for the issuance of subpoenas (Docs. 49 and 55) and in limine (Doc. 57). The motions will be denied, as described below.

## I.    Background

DeCaccia's Complaint alleges that in July 2022, staff at Lewis and Clark County Detention Center ("LCDC") disregarded his serious medical need, in violation of his constitutional rights. (Doc. 2 at 5.) He had an infected foot for some time before he was taken to an urgent care center, where it was treated, and he was prescribed medicine. (Doc. 2 at 5.)

DeCaccia's Complaint also states that LCDC has caused him "monetary

1

hardship" by "illegally" charging him $147 for the out-of-facility medical care and $10 for transportation to the hospital. (Doc. 2 at 5.)

## II.  Motion for Summary Judgment

### A.  Summary Judgment Standard

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact" and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable juror to return a verdict in the non-moving party's favor. *Id.*

The moving party has the initial burden to show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If it meets this initial responsibility, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the non-moving party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324

(quoting Fed. R. Civ. P. 56(e)).

**B. DeCaccia's Motion**

DeCaccia's first argument is that LCDC charging him for transportation to the hospital and for his scan violated "several laws" and his Fourteenth Amendment right to due process. (Doc. 44 at 2.) He claims he was entitled to notice and a pre-deprivation hearing prior to having charges made to his prison account. He also contends that the charges were made in violation of Montana statutes, which place authority to collect incarceration costs with the sentencing court. (Doc. 44 at 3, citing Mont. Code Ann. § 7-32-2245.) Finally, he claims that LCDC violated its own policy by taking more than 50% of his incoming funds. (Doc. 44 at 5.)

DeCaccia's second contention is that LCDC violated his Eighth Amendment rights to medical care. (Doc. 44 at 7.) DeCaccia claims he suffered unnecessary pain for two weeks as Defendants denied him medical care. (Doc. 44 at 8 – 9.) He also contends that Defendants failed to provide him his prescribed medication properly following his medical visit and failed to take him for a follow up visit as required. (*Id*. at 11 – 12.)

Defendants' initial response rested entirely on their position that DeCaccia's

Statement of Undisputed Facts ("SUF") did not comply with Fed. R. Civ. P. 56 and

D. Mont. L.R. 56.1. (Doc. 46 at 2 – 5.) Defendants did not file a Statement of

Disputed Facts ("SDF") with their first response. The Court subsequently ordered

DeCaccia to file a new SUF. Defendants filed a second response brief, and, this

time, an SDF. (Docs. 58 and 59.) Defendants' new brief again asserts that

DeCaccia's SUF is noncompliant but also addresses the merits of DeCaccia's

claims. Defendants do not move for summary judgment on these claims

themselves.

### C. Analysis

#### 1. Due Process Violation

"No State shall . . . deprive any person of . . . property, without due process

of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim has two

distinct elements: (1) a deprivation of a constitutionally protected liberty or

property interest, and (2) a denial of adequate procedural protections." *Brewster v.

Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).

##### a. Did DeCaccia Have a Protected Property Interest?

"There is no question that an inmate's interest in the funds in his prison

account is a protected property interest." *Shinault v. Hawks*, 782 F.3d 1053, 1057

4

(9th Cir. 2015) (quoting *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985)) (internal brackets omitted).  Like Shinault's funds, the money in DeCaccia's trust account falls within the scope of the Fourteenth Amendment's protection against arbitrary government action.  The Due Process Clause applies.

### b.  Did Defendants Give DeCaccia Due Process?

The next question asks what process was due to DeCaccia and whether the process he received was consistent with what was due. Without any real elaboration, Defendants claim that the process provided by the jail, i.e., the policy advising that charges will be deducted, is enough. (Doc. 58 at 3.)

"[T]o determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," *Shinault*, 782 F.3d at 1057, the *Shinault* court applied the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976). It considered (a) the private interest affected; (b) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (c) the government's interest, including the burdens of additional procedural requirements.  *See Mathews*, 424 U.S. at 335.

*(i)  Private Interest Affected*

Defendants took $147.00 from DeCaccia's trust account on July 28, 2022,

and two payments of $10 for transport on August 16, 2022.  (Doc. 44-1 at 3 – 4.)

In *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985), the court found that $66.00

was substantial, though in *Shinault*, the Ninth Circuit acknowledged that other

courts have found that withdrawals of $110 and $20 do not implicate a substantial

private interest. *Shinault*, 782 F.3d at 1057. The two ten-dollar payments do not

amount to significant interests, but the Court will assume $147 does. DeCaccia had

a substantial interest. This factor weighs in DeCaccia's favor.

*(ii)  Risk of Error and Value of Other Safeguards*

These deductions were conducted in the same manner as any other deduction

from DeCaccia's account for other things, such as telephone calls, copies, postage,

etc. DeCaccia contends the $147 deduction was counter to policy, but he

misunderstands the text of the policy. (Doc. 44 at 5.) The policy says that if an

inmate "has a debt, one half of any money deposited into your account will

automatically go towards any *negative balance*. In addition, any further

transactions will result in a reassessment where one half of your balance may be

assessed toward your debt." (Doc. 44-1 at 37, emphasis added.) The records show

that when the $147 was deducted, DeCaccia had more than $241 in his account—
therefore, there was no need to reduce the charge by 50%.

As to this transaction, there was little risk of error, and additional safeguards
would have added little to the reliability of the taking. This makes DeCaccia's case
distinguishable from *Shinault*, because there was no risk of mistaken calculation
here; in *Shinault*, the State's obligation to determine an inmate's ability to pay was
based on the inmate's estate, need for funds for personal support, and availability of
benefits is an individualized decision that poses a risk of error. *Shinault*, at 1057.
Further, the calculation for the costs of incarceration was not straightforward. In
DeCaccia's case, unlike *Shinault*, there is no calculation involved—it is simply a
pass through of a bill from a provider to DeCaccia.

A meaningful difference between DeCaccia's case and the situation in
*Logue v. Root*, on which he relies, is that he was aware—had been made aware
when he entered LCDC two weeks before—that he would be responsible for
medical care costs. (Doc. 44-1 at 32, citing No. CV 19-101-M-BMM-JTJ, 2020
WL 5536493 (D. Mont. June 11, 2020).) There was no several-month delay, or
intervening release from detention, to create confusion as to the reason for the
charge. In this instance, any errors in the ordinary accounting for his trust fund

could be adequately dealt with via post-deprivation grievance process.[1] *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) (quoting *Ingraham v. Wright*, 430 U.S. 651, 680 (1977)) (internal citation and quotation marks omitted).

The second factor weighs in Defendants' favor.

### (iii)  Government Interest and Burden of Additional Procedure

LCDC's interest in obtaining reimbursement for medical and other costs from inmates who have funds available for that purpose is certainly substantial— dollar for dollar as substantial as inmates' interest in the money in their trust accounts. LCDC cannot claim that accounting for inmate funds is burdensome. It does it all the time. However, LCDC fully accounted for DeCaccia's debts and its deductions, so this factor weighs in Defendants' favor.

### (iv)  Balancing the <u>Mathews</u> Factors

The *Mathews* factors favor Defendants. DeCaccia's account statement itself provided him notice of his debt, and he does not claim LCDC failed to communicate its policy regarding medical charges. Additional pre-deprivation notice or a hearing would serve no useful purpose.  When Defendants use ordinary

---

[1]  Generally, "due process of law requires an opportunity for some kind of hearing *prior to* the deprivation of a significant property interest."  *Memphis Light*, 436 U.S. at 19 (internal citation and quotation marks omitted) (emphasis added).

accounting practices, the post-deprivation process of LCDC's grievance system satisfies the Due Process Clause.

### c. State Law Issues

There are two additional issues raised by DeCaccia that are tangential to this analysis. First, DeCaccia contends that LCDC was without authority to make these charges, because the sentencing court later would excuse him from them. But he was a pretrial detainee at the time he was detained. The statutes appear to be silent on the imposition of costs on pretrial detainees specifically, though the sections authorizing counties to recoup medical costs do not refer to the status of the individual. Mont. Code Ann. § 7-32-2224. The Montana Supreme Court has not addressed the question. However, this Court need not wade into these uncertain state law waters to decide the issue of federal constitutional due process and will decline to do so here.

Second, DeCaccia himself resolves the question he poses in his brief about how a condition is determined to be pre-existing. (Doc. 44 at 6.) By Montana statute, in this context, "Preexisting" means "an illness or condition that began or injuries that were sustained before a person was in the custody of county officers." Mont. Code Ann. 7-32-2224(4). In arguing that Defendants violated his right to

medical care, DeCaccia asserts that Defendants should have known of his need on the date of his intake. (Doc. 44 at 10, citing Doc. 44-1 at 10.) Further, the urgent care practitioner's report states that the problem began about three weeks ago, presumably based on DeCaccia's self-reporting, which would have been prior to his entry in LCDC. (Doc. 44-1 at 11.) For purposes of this motion, and without deciding a matter of state law, the Court concludes that based on the medical information in the file and DeCaccia's own representations, the condition was preexisting.

DeCaccia's motion for summary judgment on his due process claim is denied.

### 2. Medical Care Claim

DeCaccia also asserts an Eighth Amendment denial of medical care claim. In fact, as he was a detainee at the time, his claim is properly considered as a Fourteenth Amendment violation. A pretrial detainee's claim for violation of the right to adequate medical care is evaluated under an objective deliberate indifference standard under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 118, 1124-24 (9th Cir. 2018). To sue an individual defendant, DeCaccia must allege facts supporting an inference that each of the following

elements exists:

1. The defendant "made an intentional decision with respect to the conditions under which the plaintiff was confined;"

2. "[T]hose conditions put the plaintiff at substantial risk of suffering serious harm;"

3. The defendant "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;" and

4. "[B]y not taking such measures, the defendant caused the plaintiff's injuries."

*Gordon*, 888 F.3d at 1125. Negligence is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A "mere lack of due care" does not violate the Constitution. Rather, DeCaccia "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

The documents provided by DeCaccia show that when he arrived at LCDC on July 8, 2022, the medical intake form noticed that he had a "cracking foot," without elaboration, though there is no record of what, if anything, was discussed about it. (Doc. 44-1 at 10.) The next date that appears in the documents is a July 16 grievance, in which he complains about the behavior of staff and asks for lotion

11

and Tylenol for his feet. His next grievance, on July 19, elevates his complaints significantly, specifying significant-sounding symptoms and directly asking for medical care.  He then is taken to urgent care on July 21 at 10:30 a.m.

From these documents, the Court cannot conclude there are no disputed material facts. Defendants dispute the import of these documents and contend that the fact that DeCaccia received treatment decides the issue. (Doc. 59.) The Court cannot fill in any gaps between DeCaccia's initial intake and the appearance of these symptoms to conclude that any individual named defendant was aware of DeCaccia's medical need, made a deliberate decision regarding that need, did not take reasonable measures to abate risk, and thereby caused those injuries. Without greater specificity as to who knew of his foot problems, when, and acted with indifference to them, the Court must deny DeCaccia's motion on the record before the Court. It should be noted, however, that this is not a conclusion that Defendants are entitled to summary judgment. They have not moved as such, nor have they established undisputed facts that they were not indifferent.

### III. Motion for Sanctions

DeCaccia seeks Rule 11 sanctions against Defendants' counsel because he received Defendants' First Discovery Requests on June 13, but it was dated on its

12

signature line and its certificate of service as June 19. (Doc. 48.) He asserts that

counsel is lying to the Court and violating Rule 11(b)(1). DeCaccia doubts this

discrepancy is a mistake, but rather, deliberate subterfuge of some sort. (Doc. 48 at

1.)

Defendants have not responded. L.R. 7.1(d)(1)(B)(ii) states that "failure to

file a response brief may be deemed an admission that the motion is well-taken."

However, the effect of Defendants' postdating the document redounds to

DeCaccia's benefit, as it results in him having an extra six days to prepare his

responses, which seems unlikely to stem from malice. Though the Court does not

condone Defendants' failure to respond to this motion, or to be careless in its

dating procedures, in this instance, it will not grant the motion on that ground

alone. The motion will be denied.

### IV. Motions for the Issuance of Subpoenas

DeCaccia has filed two motions for the issuance of subpoenas duces tecum.

In the first, he seeks electronic evidence from the record keeper of LCDC,

including body camera videos from various staff members. (Doc. 49.)  DeCaccia's

second motion requests information and testimony from Officer Traven Hoyt and

Sgt. Whitmear. (Doc. 55.) DeCaccia seeks trial testimony and body camera footage

from both officers. Defendants object to this motion on three grounds: DeCaccia failed to seek this information through normal discovery, DeCaccia's motions are untimely, and DeCaccia did not attempt to communicate regarding this motion prior to filing, as required by this Court's Local Rules. Defendants also contend the body camera footage likely no longer exists. (Doc. 60.)

DeCaccia seeks information from LCDC that he could have requested through normal discovery requests months ago, other than the trial testimony of these potential witnesses. DeCaccia's Reply contends that he did, in fact, seek these documents through discovery, but the documents he submits in support of that contention are not entirely clear. (Doc. 63-1.) The Court agrees with DeCaccia that if Defendants have produced some of these items in DeCaccia's criminal matter and now contend they do not exist, Defendants may need to redouble their effort to locate what DeCaccia seeks. However, the Court is not privy to whatever discovery may have been conducted before the deadline for discovery, which has now long passed. DeCaccia's motions for subpoenas will be denied, subject to renewal to the extent DeCaccia is requesting subpoenas for trial testimony. As to these limited requests for evidence, DeCaccia will be directed to promulgate formal discovery requests for this information on Defendants. DeCaccia's

opportunity here to make these limited discovery requests does not reopen discovery entirely. The parties must communicate in person or verbally about any discovery disputes before filing additional motions.

### V. Motion in Limine

DeCaccia has moved to bar the admission at trial of several documents that he claims are irrelevant and would be prejudicial to him if the jury saw them. (Doc. 57.) A court will grant a motion in limine and exclude evidence only if the evidence is 'inadmissible on all potential grounds;'" in all other cases, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *BNSF Ry. v. Quad City Testing Lab., Inc.*, 2010 2010 WL 4337827 at *1 (D. Mont. Oct. 26, 2010)). In this case, the Court does not know which of these documents Defendants would propose as exhibits at trial, so it is impossible to rule at this juncture. In addition, admissions of evidence at trial are ruled by the Federal Rules of Evidence, and DeCaccia will have the opportunity to object to the admission of any exhibit under the relevant rules, including Rule 403. The motion will be denied.

Accordingly, the Court issues the following:

# ORDER

1.      DeCaccia's motion for summary judgment is DENIED. (Doc. 44.)

2.      DeCaccia's motion for sanctions is DENIED. (Doc. 48.)

3.      DeCaccia's motions for subpoenas are DENIED, subject to renewal for trial testimony, as described. DeCaccia is directed to promulgate discovery requests on Defendants limited to the specific information he has sought in his motions.

4.      DeCaccia's motion in limine is DENIED, subject to renewal with specific and proper objections at trial.

5.      By separate Order, the Court will schedule the final disposition of this matter.

6.      At all times during the pendency of this action, DeCaccia must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

DATED this 23rd day of August, 2023.

Kathleen L. DeSoto, Magistrate Judge
United States District Court